IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM FANSLOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 3558 |
| v. ) | |
| ) | Judge William J. Hibbler |
| CHICAGO MANUFACTURING ) | |
| CENTER, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

William Fanslow claims he was discharged from employment with Chicago Manufacturing Center, Inc. ("CMC") because he took certain actions in furtherance of a False Claims Act ("FCA"), 31 U.S.C.A. § 3730, enforcement action. The test to determine if Fanslow's actions were protected under § 3730 is whether: "(1) the employee in good faith believes; and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government." *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 480 (7th Cir. 2004). Fanslow believed that CMC was submitting false claims for reimbursement to the National Institute for Standards & Technology ("NIST"), while the funds were being diverted to a for-profit entity in which CMC executives had a personal stake. *Id.* CMC argues that it is authorized to create and fund a web of for-profit ventures under its agreements with NIST. *Id.*

On March 26, 2003, the Court granted summary judgment in favor of CMC, but on September 20, 2004, the Seventh Circuit reversed. The Appellate Court held that:

It is unclear on this record, however, whether Fanslow sufficiently understood, or should have understood, the terms of the NIST agreements at the time of his investigation and whether a reasonable employee in these circumstances would have thought the same. Fanslow knew that CMC received substantial funding from NIST, and Fanslow specifically approached an NIST official to ask about the propriety of MFR.Net.

*Id.* As such, the Seventh Circuit mandated that:

> On remand, both parties should address more concretely the question whether Fanslow in good faith believed and a reasonable employee in similar circumstances would have believed that CMC was committing fraud on the government in the actions Fanslow has identified. The record should be developed further to show which of CMC's claims for federal funds Fanslow thought were fraudulent or false: What was CMC telling NIST about its use of the funds? What did Fanslow reasonably believe it was saying?

*Id.* at 483.

On April 12, 2005, Fanslow filed the instant motion to compel, alleging that the following discovery requests were improperly answered or not answered by CMC: (1) Fanslow's Request to Admit (Second Set) Numbers 6, 7, 9, 10, 11, 12, 14; (2) Fanslow's Interrogatories (Third Set) Numbers 1, 4, 5, 7, 10, 11, 12, 16, 17, 20; and (3) Fanslow's Request to Produce (Third Set) Numbers 1, 6. CMC objected to Fanslow's requests on the grounds that they were overbroad, vague, unduly burdensome, immaterial, irrelevant, and/or privileged, and CMC now argues that Fanslow's motion is based on incorrect assumptions of fact and interpretations of law. Although Fanslow and CMC did not have an official Local Rule 37.2 conference, this motion is ripe for resolution. The parties have been before the Court numerous times to discuss their discovery disputes, and it was evident to the Court and to the parties that they would not be able to resolve their disputes short of a motion.

The Court rules as follows on the discovery requests at issue:

Interrogatory No. 1: "Identify and describe in detail all material facts surrounding your response to each Request to Admit. Your response shall identify and describe all persons, documents, communications, investigations, and/or inquiries on which you base your response."

CMC claims that this Interrogatory seeks privileged communications, is overly broad in both time and scope, unduly burdensome, and seeks irrelevant material. The Court agrees with CMC that the Interrogatory is overly broad in scope by seeking "all material facts" as to each response, but the Court disagrees with the remainder of CMC's objections. The Court orders CMC to identify and describe all persons, documents, and communications upon which CMC based its responses to each Request to Admit.

The Court also orders that, to the extent that CMC believes that any documents or communications – in response to this and all other requests – are protected by the attorney-client privilege and/or the work product doctrine, CMC provide Fanslow with a detailed privilege log indicating, at least, the senders, recipients, other persons copied on the communications, date, general description of each document withheld, and basis for the privilege.

Interrogatory No. 4: "Identify and describe all for-profit entities that were in any way affiliated with CMC through common ownership, management, and/or funding. For each entity, identify all persons and entities that prior to January 2001, held at any time, an equity or ownership interest in, had a management role in, received any remuneration from, was a Director of, and/or served as a consultant to the entity. For each person identified, state specifically their role and responsibilities as to the entity, and state any financial benefits they received or were to receive from the entity."

CMC objected to this interrogatory on the grounds that it is overly broad in time and scope, unduly burdensome, vague, and seeks irrelevant and immaterial information. The Court disagrees. This material is relevant. The Seventh Circuit ordered that on remand, the parties should better address whether Fanslow in good faith believed and a reasonable employee in similar circumstances

3

would have believed that CMC was committing fraud on the government. *Fanslow*, 384 F.3d at 483. CMC is required to respond to Fanslow's discovery requests if they are reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26 (b). An answer to this interrogatory would help lead to the discovery of admissible evidence as to what CMC was telling NIST about its use of the funds.

In addition, while the interrogatory is not overly broad, vague or unduly burdensome, CMC's answer is inadequate under Fed. R. Civ. P. 33 (d). CMC pointed to certain documents it had produced and listed certain for-profit affiliates of CMC, although it is unclear whether CMC listed all of the for-profit affiliates of CMC. Rule 33 (d) contemplates that business records may be produced as an answer to an interrogatory where the answer may be derived from the records and where the burden of deriving the answer is substantially the same for the party serving the interrogatory as for the party served. Neither of these prerequisites for Rule 33 (d) are clear in this case, and even if the prerequisites were met, the Rule requires that "[a] specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." As the seventy-six pages to which CMC pointed were not identified for Fanslow or the Court, CMC's answer is insufficient, and the Court orders CMC to respond to Interrogatory No. 4 as stated.

> Interrogatory No. 5: "Identify all documents, communications and correspondence that refer to, or in any way make reference to, CMC resources being used for illegal, unallowable or unauthorized purposes. The terms 'unallowable' and 'unauthorized' should be interpreted in their broadest sense. This interrogatory includes documents, communications and correspondence that is or was in the possession of any CMC Directors or Board of Directors."

CMC objected to this Interrogatory on the grounds that it is vague, overly broad, unduly

4

burdensome, seeks irrelevant information, and may seek information protected by the attorney-client privilege or the work product doctrine. The Court disagrees. CMC argues that information regarding use of non-reimbursable CMC resources is not relevant; however, whether or not CMC is legally required to get authorization for non-reimbursable CMC resources does not make the information sought irrelevant. The standard is what Fanslow "in good faith believed and a reasonable employee in similar circumstances would have believed that CMC was committing fraud on the government." *Fanslow*, 384 F.3d at 483. The Court orders CMC to respond to this Interrogatory as stated.

> Interrogatory No. 7: "Identify all documents and communications that refer to, or reference the use of CMC resources to finance, or in any way support any for-profit entities in which CMC, Demetria Giannisis or John Panfil either held a financial or ownership interest."

CMC objected to this information on the grounds that the Interrogatory is overly broad, unduly burdensome, vague, and seeks irrelevant information, and may seek privileged material. CMC further stated that Giannisis did not have a financial or ownership interest "in any of the for-profit entities involved in this case." In addition, CMC referred to the 3,000 pages of documents previously produced and produced an additional 1,100 documents in response to the question. In the case of Giannisis, CMC had sufficiently answered the Interrogatory, except that the Court orders CMC to clarify which for-profit entities it is referring to. With regard to Panfil, the Court orders CMC to more specifically identify which documents and communications demonstrate that Panfil had a financial or ownership interest in any for-profit entities, in accordance with Rule 33 (d).

> Interrogatory No. 10: "Identify and describe all documents that refer to or reference the ownership and/or management of each of the for-profit entities."

CMC objected on the same grounds as before: privilege, overbreadth, vagueness, and

5

irrelevance. Again, the Court disagrees with CMC. As for redacting the draft MIN operating agreement, CMC should specify in a privilege log, the drafters of the agreement, the recipients, and all other parties who viewed the draft. Communications between an attorney and her client, such as a draft agreement, are privileged; however, this privilege can be waived if the draft was distributed or circulated rather than intended to be kept confidential between the attorney and client. *See, e.g., R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, No. 99 C 1174, 2001 WL 1286727, at *6 (N.D. Ill. Oct. 24, 2001). In addition, CMC did not adequately adhere to Rule 33 (d). As explained above, CMC must specify which documents in the 1,000 pages it cited are responsive to this Interrogatory.

> Interrogatory No. 11: "Identify and describe all documents on which you rely in making your representation that the government knew, prior to January 2001 that CMC funds were being used to provide financing and/or other resources to the for-profit entities."

CMC objected on the grounds of privilege, overbreadth, vagueness, and irrelevance. Again, the Court disagrees with CMC. Although CMC claims that legally, NIST's prior approval was not necessary for CMC to provide funds to for-profit entities, that does not excuse CMC from answering this Interrogatory because it will likely lead to the discovery of admissible evidence, as explained above. Furthermore, CMC's citation to over 1,100 pages of documents does not satisfy Rule 33 (d)'s requirement for specificity. The Court orders CMC to more specifically identify the documents responsive to this Interrogatory in accordance with Rule 33 (d).

> Interrogatory No. 12: "Identify and describe all communications prior to January 2001, that any Director, officer, employee, or agent of CMC had with any government official, during which communication a government official specifically and expressly authorized the use of CMC funds and/or resources to be used to capitalize, fund, or otherwise benefit in any way, any of the for-profit entities."

CMC objected to this Interrogatory on a variety of grounds, and explained that the details of each communication between CMC employees and government officials are not readily available. The Seventh Circuit, however, specifically ordered the parties to look into the question of: "What was CMC telling NIST about its use of the funds?" *Fanslow*, 384 F.3d at 483. The Court orders CMC to identify communications its employees have had with government officials regarding the use of CMC funds for for-profit entities. If this information is contained within the thousands of pages of documents produced, the Court orders that CMC specifically identify the documents and pages produced that answer the Interrogatory, in accordance with Fed. R. Civ. P. 33 (d).

> Interrogatory No. 16: "Identify all computers, software, and computer peripherals that Demetria Giannisis used in her residence which were paid for by CMC."

CMC objected on the grounds that the request is overbroad, unduly burdensome, vague, and immaterial. The Court disagrees. An answer to this Interrogatory is reasonably calculated to lead to the discovery of admissible evidence. The question of whether Fanslow in good faith believed or whether a reasonable employee would believe that CMC was committing fraud on the government would be impacted if Giannisis was receiving certain monetary benefits from CMC, as Fanslow believes these funds may have come from NIST funding.

> Interrogatory No. 17: "Identify and describe all documents that refer to or reference the use of CMC resources to pay costs specifically associated with John Panfil's travel, housing, and/or lodging prior to January 2001."

CMC objected on the grounds that the request is overbroad, unduly burdensome, vague, and immaterial. The Court disagrees. An answer to this Interrogatory is reasonably calculated to lead to the discovery of admissible evidence. The question of whether Fanslow in good faith believed or whether a reasonable employee would believe that CMC was committing fraud on the government

would be impacted if Panfil was receiving certain monetary benefits from CMC, as Fanslow believes these funds may have come from NIST funding.

> Interrogatory No. 20: "Identify and describe all communications Keith McKee had with any persons regarding CMC paying for John Panfil's apartment."

CMC objected on the grounds that the request is overbroad, unduly burdensome, vague, and immaterial and subject to attorney-client privilege or the work-product doctrine. This Interrogatory is material for the same reasons that Interrogatory number 17 is material, as it provides further information as to CMC payments to Panfil. If CMC believes any of this information is privileged, the Court orders CMC to provide a privilege log detailing the basis for this claim.

> Request to Produce No. 1: "Produce all documents described, identified, referenced, and/or referred to in your responses to the foregoing interrogatories and Requests to Admit."

CMC objected to this request on multiple grounds, and referred to all documents previously produced and 1,000 additional documents. CMC's response is sufficient so long as the documents were produced as they are kept in the usual course of business in accordance with Fed. R. Civ. P. 34.

> Request to Produce No. 6: "Produce all financial statements, profit/loss statements, audits, audit reports, tax returns, and bank statements for the years 1997 through 1999 for CMC and each of the for-profits."

CMC objected on multiple grounds and referred to documents previously produced and fifty additional documents. Provided the documents were produced as they are kept in the usual course of business, CMC has satisfied Rule 34's requirements for production of documents.

> Request to Admit No. 6: "Admit that prior to January 2001, CMC provided resources to MFR.Net without billing MFR.Net for those resources."

CMC objected that "without billing MFR.Net for those resources" is vague, and CMC rephrased this as "did not maintain a separate or unique billing account code for labor or consultants

8

that CMC provided to MFR.Net." The Court disagrees that the request is vague and orders CMC to respond to this request to admit as it stands. CMC's answer does not "fairly meet the substance of the requested admission" as required by Fed. R. Civ. P. 36 (a).

> Request to Admit No. 7: "Admit that prior to January 2001, CMC did not segregate funds received from the government from its other revenue sources."

CMC objected that "did not segregate funds" is vague and rephrased this as "unable to identify the amounts and source of funds obtained from its various funding sources." The Court disagrees that this request is vague and orders CMC to respond to this request to admit as it stands.

> Request to Admit No. 9: "Admit that prior to January 2001, CMC funds were used to pay some or all of MFR.Net's operating expenses."

CMC properly admitted that CMC funds were used to pay some of MFR.Net's operating expenses. CMC's conclusion as to the legality of these transactions does not alter its response.

> Request to Admit No. 10: "Admit that prior to January 2001, CMC did not tell any government official, agency or department that CMC was providing resources to MFR.Net."

CMC objected that "did not tell" is vague and responded that government officials were not "unaware" that CMC funds were being provided to MFR.Net. The Court disagrees that this is the proper interpretation. The request to admit seeks to know whether anyone at CMC made the government aware of that CMC was providing resources to MFR.Net.

> Request to Admit No. 11: "Admit that prior to January 2001, Demetria Giannisis did not tell and [sic] any government official, agency or department that CMC was providing resources to MFR.Net."

Again, CMC objected that "did not tell" is vague, but as explained above it is not. The Court orders CMC to answer the request to admit as written.

> Request to Admit No. 12: "Admit that prior to January 2001, John Panfil did not tell

9

and [sic] any government official, agency or department that CMC was providing resources to MFR.Net."

Again, CMC objected that "did not tell" is vague, but as explained above it is not. The Court orders CMC to answer the request to admit as written.

> Request to Admit No. 14: "Admit that prior to January 2001, CMC did not have express written authorization from any government department or agency to use CMC resources to benefit MFR.Net."

CMC properly admitted that CMC funds were used to pay some of MFR.Net's operating expenses. CMC's conclusion as to the legality of these transactions does not alter its response.

## VI. Conclusion

Due to the foregoing analysis, Fanslow's motion to compel is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

_5/23/05_
Dated

_Wm. J. Hibbler_
The Honorable William J. Hibbler